WILLIAMSBURGH SAVINGS BANK, BROOKLYN, N. Y., Appellant, *v.*
STATE OF NEW YORK, Respondent.

Third Department, July 1, 1925.

State — claims against State arising out of bonds issued by New York State Water Supply Commission, pursuant to State Boards and Commissions Law, art. 2, certificates of indebtedness issued by Conservation Commission, pursuant to Conservation Law, § 459 (now § 415), as amd., and tax sale certificate on sale of land to meet obligation of bonds and certificates of indebtedness — said bonds and certificates of indebtedness not obligation of State — tax sale certificate invalid since assessment was illegal — admission of liability by State not contained in Enabling Act (Laws of 1923, chap. 830) — Legislature cannot delegate power to recognize justice of claim — claims were not founded in right and justice.

Bonds issued by the New York State Water Supply Commission pursuant to the provisions of the State Boards and Commissions Law (Art. 2) to meet the cost of improvement of Canaseraga creek in the county of Livingston and certificates of indebtedness issued by the Conservation Commission pursuant to section 459 (now section 415) of the Conservation Law, as amended, for the purpose of maintaining the Canaseraga creek improvement and to provide moneys to

meet interest payments on the bonds issued, are not obligations of the State of New York, and the State is not liable thereon, for its credit was never pledged for the payment of the bonds.

A tax sale certificate purchased by the claimant on the sale of lands within the improved district for the purpose of meeting the bonds was invalid in view of a decision that the so-called improvement was not in fact an improvement, but a detriment to many of the properties within the district; that benefits did not accrue as fixed by the Commission; that the assessment of all the expenses of the improvements to the landowners was not justified; that the apportionment made was erroneous; and that the entire assessment was illegal.

The Enabling Act (Laws of 1923, chap. 830) pursuant to which this claim was presented against the State does not contain an admission by the State of its liability, for it simply provides that if the Court of Claims shall find that the claims, or any of them, were founded in right and justice or in law and equity against the State of New York and are in right and justice payable thereby, the State shall be deemed to be liable therefor, and they shall constitute legal and valid claims against the State. To make the Enabling Act effective, the Legislature should have acknowledged the justice and equity of the claim. The Legislature had no power to delegate to the Court of Claims the determination of the question whether or not the claims were just and equitable.

Even if the power could have been delegated, there can be no recovery for the Court of Claims has found that the claims are not founded in right and justice and has denied an award.

APPEAL by the plaintiff, Williamsburgh Savings Bank, Brooklyn, N. Y., from a judgment of the Court of Claims in favor of the defendant, entered in the office of the clerk of said court on the 8th day of July, 1924.

*Hawkins, Delafield & Longfellow* [*E. J. Dimock* and *John C. Loud* of counsel], for the appellant.

*Albert Ottinger, Attorney-General* [*James Gibson, Second Deputy Attorney-General,* of counsel], for the respondent.

H. T. KELLOGG, J.:

The claimant is the owner of certain bonds issued by the New York State Water Supply Commission, pursuant to the provisions of chapter 56 of the Laws of 1909, being chapter 54 of the Consolidated Laws, known as the State Boards and Commissions Law (Art. 2), and amendatory and supplementary acts. The bonds were issued " to pay the cost of the Improvement of Canaseraga Creek in the County of Livingston." Each bond recites that the Water Supply Commission " is justly indebted and for value received hereby promises to pay " a sum named to the holder of the bond. It also recites that " it shall be payable by the assessment and levy of taxes upon the lands and property included within the improvement district created by said State Water Supply Commission for the improvement of said Canaseraga Creek according to the proportional share thereof determined as

in said Act provided." Chapter 56 of the Laws of 1909 was a re-enactment, with modifications, of the provisions of chapter 734 of the Laws of 1904. Under the latter act the State Water Supply Commission, which succeeded to the powers and duties of the River Improvement Commission (See Laws of 1906, chap. 418), had determined upon the improvement of the Canaseraga creek and fixed the bounds of the improvement district. It had determined that all the benefits of the improvement would accrue to the individual landowners within the district, and that the expense of the improvement should fall exclusively upon the lands included within its bounds. Its determination had been approved by the Legislature. (Laws of 1907, chap. 195.) The Commission had entered into contracts for the work required to be done in order to improve and regulate the flow of the creek. It had determined the percentage of the expense of the improvement which should be borne by the several properties within the district. In a case involving the power of the Commission to acquire by condemnation lands necessary for the Canaseraga creek improvement, it had been authoritively held that chapter 734 of the Laws of 1904, under which the Commission was proceeding, was constitutional. (*State Water Supply Commission* v. *Curtis*, 192 N. Y. 319.) In that case the Court of Appeals had said: " It [the act] nowhere assumes to pledge the credit of the State or any political subdivision thereof for the payment of compensation to the landowners. We can discover no language in the act which can be construed to have any such effect, nor indeed, is it easy to perceive what security is afforded for the payment of the bonds or the certificates of indebtedness which the State Water Supply Commission is authorized to issue, except the proceeds of the assessments if they shall be collected." Chapter 56 of the Laws of 1909, under which the claimant's bonds were issued, although differing from chapter 734 of the Laws of 1904 in important particulars, made no change in its provisions, and added none, whereby the expenses of the improvement became payable, or bonds issued therefor became collectible, otherwise than through taxes assessed against individual landowners within the district. The case of *State Water Supply Commission* v. *Curtis* (*supra*), then, was a direct authority to the point that the claimant's bonds were collectible out of local assessments and not otherwise. The credit of the State was never pledged for the payment of the bonds, and this the claimant should have known when it became the holder of the bonds.

The claimant is also the owner of certain certificates of indebtedness issued by the Conservation Commission pursuant to section 459 of chapter 647 of the Laws of 1911, as amended by chapter 619

of the Laws of 1915. These statutory provisions are in section 415 of the Conservation Law (as renum. from § 459 by Laws of 1915, chap. 662). The Conservation Commission had succeeded to the powers and duties of the River Improvement Commission and the State Water Supply Commission. (Laws of 1911, chap. 647, art. 7, as amd.) The certificates were issued for the purpose of maintaining the Canaseraga creek improvement and to provide moneys to meet interest payments on the bonds issued. The statute provided that all certificates issued should be paid in the manner provided for the payment of bonds. (Laws of 1915, chap. 619, amdg. Laws of 1911, chap. 647, § 459, as renum. § 415 by Laws of 1915, chap. 662.) The issuance of bonds, as then provided for, was to be "without liability on the part of the Commission or any Commissioner personally for the payment thereof or of the interest thereon and without liability on the part of the State beyond the proportion of any assessment to be made or certified against the State on account of said improvement." (Laws of 1911, chap. 647, § 459.) The Commission had already determined that no part of the expense should be assessed or certified against the State. Accordingly, the certificates issued were by their terms made payable "by the assessment and levy of taxes upon the lands and property included within the improvement district created by said State Water Supply Commission for the improvement of said Canaseraga creek according to the proportional share thereof as in and by said act determined." The law did not permit the Commission to pledge the credit of the State for the payment of the certificates. Moreover, the certificates issued contained no terms purporting to pledge the credit of the State.

The claimant is also the owner of a tax sale certificate. Certain of the lands within the improvement district were sold to meet payments due upon obligations issued. The claimant was a bidder at the sale and became the owner of the certificate in question. Since the issuance of the bonds, the certificates of indebtedness and the tax sale certificate it has been determined in court proceedings that the so-called river improvement was not in fact an improvement but a detriment to many of the properties within the district; that benefits did not accrue as fixed by the Commission; that the assessment of all the expenses of the improvement to the landowners was not justifiable; that the apportionment made was erroneous; that the entire assessment was illegal. With this decision the relator's certificate became valueless. Likewise the lands against which the expenses of the improvement were assessed ceased to provide security for the payment of the relator's bonds and certificates of indebtedness. It is clear, however, that no legal

obligation rests upon the State to pay the bonds or certificates of indebtedness, or to make restitution to the claimant for its losses, unless the State, acting through the Legislature, has voluntarily assumed or created such an obligation. The claimant contends that the obligation was created by chapter 830 of the Laws of 1923.

It is well settled that the Legislature may "recognize" or "acknowledge" the justness of a moral or equitable claim against the State, and "assume" or "create" an obligation on the part of the State to pay it. (*Cole* v. *State of New York*, 102 N. Y. 48; *O'Hara* v. *State of New York*, 112 id. 146; *Munro* v. *State of New York*, 223 id. 208; *People* v. *Westchester Co. Nat. Bank*, 231 id. 465.) Self-evidently this is a legislative, not a judicial or administrative function, and may not be delegated. If, therefore, the Legislature remits a claim to the Court of Claims to determine for itself whether it be sanctioned by justice or equity, it has failed to legislate into being a principle of recovery whereby the claim may be allowed, and the claim must fail. (*Babcock* v. *State*, 190 App. Div. 147; affd., 231 N. Y. 560; *Sherlock* v. *State*, 198 App. Div. 494; 202 id. 771; affd., 235 N. Y. 515.) Chapter 830 of the Laws of 1923 confers jurisdiction upon the Court of Claims to hear and determine the claimant's claims. It provides: "If the court finds that such claims or any of them were founded in right and justice or in law and equity against the State of New York, and are in right and justice presently payable thereby, the State shall be deemed to have been liable therefor and they shall constitute legal and valid claims against the State." The Legislature wholly refrained from expressing its own acknowledgment of the justness and equity of the claims. It in effect said this: "If the Court of Claims deems the claims just and equitable, then they shall be legal and valid claims." It thus attempted to delegate to the Court of Claims the power to approve the claims as just, and thereby to exercise the legislative power of creating a law of recovery to be administered by itself in granting judgment. This the Legislature could not do. (*Sherlock* v. *State, supra.*) Even if the power was delegable there can be no recovery, for the Court of Claims has itself found that the claims were not "founded in right and justice" and has denied an award.

The judgment should be affirmed, with costs.

Judgment unanimously affirmed, with costs.