**TEXAS PRISON BOARD et al. v. CABEEN.**
No. 3948.

Court of Civil Appeals of Texas. Beaumont.
Feb. 18, 1942.

Rehearing Denied Feb. 25, 1942.

Fulbright, Crooker, Freeman & Bates, and W. N. Arnold, Jr., all of Houston, Gerald C. Mann, Atty. Gen, and D. Burle Daviss and Geo. W. Barcus, Asst. Attys. Gen., for appellants.

R. H. Weatherly and W. C. McClain, both of Conroe, for appellee.

WALKER, Chief Justice.

On or about the 18th day of December, 1940, Chancey Wilson Cabeen, the son of appellee, Mrs. Gertrude Cabeen, was killed in a collision on highway No. 75 in Montgomery County between an automobile in which he was riding and a truck owned by the Texas Prison System, driven and operated at the time of the collision by Harry Lynch, a convict, in the business of the Texas Prison System. This suit was brought by Mrs. Cabeen, appellee, on allegations that she was the sole beneficiary of her deceased son, for the damages suf-

fered by her in the collision, against the Texas Prison Board, and the Texas Prison System, and against the following named defendants in their official and personal relations: Dr. Sidney M. Lister, Chairman of the Texas Prison Board, O. J. S. Ellingson, Manager of the Texas Prison System, and W. W. Waid, Warden of the Texas Prison System, and N. B. Archer, an employee of the Texas Prison System. We quote from appellee's petition:

"III. That the Texas Prison Board and Prison System is an arm of our State Government. That the affairs of the State Prison System are invested by statute in the Texas Prison Board, that the said Texas Prison Board, together with the General Manager are vested with exclusive management and control of the Prison System, and all properties belonging thereto, and are responsible for the management of the affairs of the Prison System. That the said General Manager, O. J. S. Ellingson, was duly appointed by the Texas Prison Board as General Manager of said Prison System and was at all times material to this suit General Manager of said Prison System."

"V. Plaintiff would represent to the Court that the Prison System on or about the 18th day of December, 1940 owned and operated a large number of trucks in connection with the affairs of the Prison System. That said trucks are operated exclusively under the management, control, and direction of O. J. S. Ellingson, W. W. Waid, and N. B. Archer in their capacity aforesaid. That on the date aforesaid one of the trucks belonging to the Prison System, about 4:30 a. m. was being operated on highway 75 in Montgomery County, Texas between Conroe, Texas and Willis, Texas. That at the time and place in question, said Prison truck was being operated, same was being done under the exclusive management, control and direction of the above named defendants. The driver of said truck at the time and place in question was Harry Lynch, who was an inmate of the Texas Prison System, and at the time of the hereinafter alleged acts was driving and operating said truck loaded with canned goods, with the knowledge and consent of the defendants and under their management, control and direction. That said Prison truck at the time and place in question was being operated for a purpose legitimately connected with the operation of the Texas Prison System, and

at the time and place aforesaid, the said Harry Lynch was acting with expressed authority of the above named defendants."

"IX. That immediately prior to and at the time and place of the collision in question, the defendants acting by and through their duly authorized agents, servant and employee, Harry Lynch, acting in the capacity aforesaid, was guilty of negligence in the operation of the said truck in several respects, which said acts of negligence operated either singularly or concurrently to produce said injuries to the said Chancey Wilson Cabeen, as will be hereinafter more fully shown, which said acts were both of commission and omission, and were the following, to-wit:

"1. In driving and operating said truck and trailer, constituting a commercial motor vehicle, upon a public highway, and containing an actual gross weight of over six thousand (6,000) pounds at a rate of speed in excess of twenty-five (25) miles per hour, in violation of Section 8 of Article 827a, Vernon's Annotated Penal Code.

"2. In operating the truck when a portion thereof was over the center line of the highway and on the left hand side considering the direction in which he was traveling.

"3. In failing to yield one-half of said road, in violation of the laws of the State of Texas.

"4. In driving and operating said truck and trailer, having a width in excess of seventy (70) inches without two (2) clearance lamps on the left side of said truck and trailer in violation of Section 9 of Article 827a, Vernon's Annotated Penal Code.

"5. In driving and operating said truck and trailer, without headlights visible under normal atmospheric conditions, at a distance of not less than five hundred (500) feet, in violation of Section 9 of Article 827a, Vernon's Annotated Penal Code.

"X. That each and all of the aforesaid several acts and omissions of Harry Lynch, the agent, servant and employee of the defendants, acting as aforesaid, were jointly and severally negligent and were each and all, jointly and severally, the proximate cause of the death of Chancey Wilson Cabeen, and had it not been for the aforesaid acts and omissions of negligence on the part of Harry Lynch, the agent, servant and employee of the defendants, acting as

aforesaid, the collision and resulting injuries and death to the said Chancey Wilson Cabeen would not have occurred."

The defendant answered by general demurrer, general denial, etc. On trial to a jury, answering special issues, the driver of the truck was convicted of negligence, proximately causing the death of appellee's son in the following respects: He was driving in excess of 25 miles per hour at the time of the collision; was driving on the left hand side of the road; was driving without two clearance lamps on the left side of the truck; was driving without burning head lights. The jury acquitted appellee's son of the several acts of contributory negligence charged against him by appellants, and found further that the collision was not an unavoidable accident. Appellee's damages were assessed at the sum of $8,000.

After appellee closed her testimony, appellants filed a motion for a peremptory instruction in their behalf, which was overruled, and to which ruling they excepted. After all the testimony was in, appellants moved a second time for an instructed verdict, which was overruled, and to which they excepted. The Texas Prison System objected and excepted to the entire charge as given by the trial court, for the reason that on the entire evidence it appeared as a matter of law that the Texas Prison Board and the Texas Prison System were integral parts of the State of Texas, for which reasons they were not liable for the injuries caused by the negligence of the convict, Harry Lynch. These exceptions were overruled, to which they duly excepted. After the jury returned its verdict, Texas Prison Board and Texas Prison System moved the court to enter judgment in their favor non obstante veredicto, on the theory that they were governmental agencies and not liable for the injuries inflicted by the negligence of the convict, Harry Lynch. This motion was overruled, to which they excepted.

On the verdict of the jury, judgment was entered in favor of appellee, Mrs. Gertrude Cabeen, on the 9th day of June, 1941, for $8,000 against appellants, Texas Prison Board, Texas Prison System, and against the following named appellants in their individual relation: Dr. Sidney M. Lister, Chairman of the Texas Prison Board, O. J. S. Ellingson, Manager of the Texas Prison System, W. W. Waid, Warden of the Texas Prison System, and N. B.

Archer, and an employee of the Texas Prison System. From the judgment against them appellants have duly prosecuted their appeal to this court. The basic contention of the Texas Prison Board and the Texas Prison System is that no cause of action was alleged against them by appellee's petition, or proven against them by the evidence, or found against them by the verdict of the jury. We sustain this contention.

Articles 6166a to 6203g, Vernon's Ann.Civ.St., establish and create the Texas Prison System and the Texas Prison Board, making them governmental agencies. In fact, appellee alleged "that the Texas Prison Board and Prison System is an arm of our State government." A suit against the Prison System and the Prison Board, and their officers and agents in their official relation, is a suit against the State of Texas. Herring v. Houston Nat. Exchange Bank, 113 Tex. 264, 253 S.W. 813. It is the law that the State of Texas is not liable for the torts or negligence of its officers, agents, servants or employees. State v. McKinney, Tex.Civ.App., 76 S.W. 2d 556; State v. Flowers, Tex.Civ.App., 94 S.W.2d 193; Brooks v. State, Tex.Civ. App., 68 S.W.2d 534; Welch v. State, Tex. Civ.App., 148 S.W.2d 876. It follows that appellants, Texas Prison System and Texas Prison Board, and Dr. Sidney M. Lister, O. J. S. Ellingson, W. W. Waid and N. B. Archer in their official relation were not liable to appellee for the tort of Harry Lynch, the driver of the truck, which tort resulted in the death of appellee's son.

Appellee does not controvert the general propositions announced above, but would hold appellants liable on the following propositions:

"Reply to Point One. By virtue of Art. 6166z10, Vernon's Annotated Statutes, appellee was entitled to judgment against the Texas Prison System, Texas Prison Board, and the other named appellants, since by the passage of said statute, the State had waived its immunity and assumed liability for the torts committed by the officers and employees of the prison system while discharging a duty legitimately connected with the operation thereof.

"Reply to Point Two. It is evident from Art. 6166z10, Vernon's Annotated Statutes that the State intended to waive immunity and assume liability for the torts committed by the officers and employees of the Texas

Prison System in the discharge of their duties legitimately connected with the operation of the Texas Prison System.

"Reply to Point Three. The pleadings and proof show that appellants were vested with authority to control and manage the affairs of the prison system and that they were, on the date in question, acting officially by and through Harry Lynch, the driver of said truck, who was operating same under the direction and control of appellants."

We give the Article of the statutes relied upon by appellee to support her cause of action:

"Art. 6166z10. Liability insurance of persons operating motor vehicles used by Prison System

"Sec. 1. That the Texas Prison Board shall have the power to insure the officers and employees of the Texas Prison System from liability to third persons arising from and out of the use and operation of automobiles, motor trucks and other motor vehicles used by the Texas Prison System for the transportation of prisoners, for the transportation of the products of the Prison System or for other purposes legitimately connected with the operation of the Texas Prison System, by procuring policies for that purpose with some reliable insurance company authorized to do business in this State. All insurance taken out by the said Board for and in behalf of the benefits of the State shall be on forms approved by the Insurance Commission as to form and by the Attorney General as to Liability.

"Sec. 2. All policies of insurance heretofore subscribed by the Texas Prison Board for the purposes hereinabove enumerated are hereby validated, approved and are declared to be in full force and effect. (Acts 1933, 43rd Leg., p. 624, ch. 208.)"

In February, 1941, the Legislature, by a concurrent resolution, Acts 1941, p. 1475, authorized appellee to institute this suit, but this resolution expressly provided: "* * * However, it is to be understood that the purpose of this Resolution is to grant permission to said Mrs. Gertrude Cabeen to bring suit against the State of Texas, and no admission of liability of the State is made by this Resolution and the facts as set out herein must be proved in court." Appellee claims no liability by virtue of this concurrent resolution, but expressly states in her brief that, in the absence of the passage of Art. 6166z10,

supra, she has no cause of action against the Texas Prison System and the Texas Prison Board.

The following is a brief statement of the facts relied upon by appellee: W. W. Waid testified that he was Warden of the Prison System and had been for eleven years; that the Prison System owned a number of trucks which were handled through the Prison store in charge of Mr. Archer; that he, Waid, selected and picked the trusties to operate the trucks and that the General Manager approved the trusties; that there were two trusties on the particular truck involved in the collision; that Harry Lynch was a trusty; that the Prison System operates various and sundry farms in connection with its plant, being eleven in number; that these Prison farms are scattered over various sections of the State; that the Prison System raised cattle and hogs and vegetables and other commodities which are used by the Prison System to feed the prisoners; that the Prison Board operates a canning plant at the Central Prison Farm at Sugarland where the different vegetables are canned.

N. B. Archer testified that he was Manager of the Prison store where commodities from the different farms are stored; that it is a clearing house for all the farms; that the various prison farms make requisitions to the General Manager's office for commodities and the goods are then delivered; that the Prison store is operated as a part of the Prison System.

Harry Lynch was an inmate of the penitentiary and a trusty, and he was the driver of the Texas Prison System's truck at the time of the accident, and was returning from the Central Prison Farm at Sugarland with a load of canned goods, having been directed by Mr. Archer to go to the Central Farm for these commodities.

We quote as follows from appellee's brief, giving her construction of Art. 6166z10:

"Appellee takes the position that at the time her cause of action arose, there was a pre-existing law whereby the Legislature had assumed liability and consented to become liable in damages for the torts of its officers, agents and servants.

"The question before the Court is, what was the intent of the Legislature and what was the purpose of the passage of the article above quoted? From the cases herein cited, we have seen that the State is

not liable for the negligent and careless acts of its officers, agents and servants committed while in the performance of a governmental function. It is likewise true that the officers and agents would not be liable for their torts committed while in the performance of a governmental function, because they would be immune from such liability, since the State was the real party against which relief is sought.

"In view of the foregoing authorities, no liability would attach to either the State or its officers, agents and servants while in the performance of a governmental function. This being true, why the necessity of passing said statute and providing for the expenditure of public money for an useless thing? Why the necessity of paying large premiums for protection that the State did not get, did not need, and already had because of its sovereignty? In construing the foregoing statute, we should bear in mind that a statute or provision should not be given a construction rendering it fruitless, futile, meaningless, purposeless, or useless when the meaning can be otherwise construed. City of Houston v. Allred, 123 Tex. 334, 71 S.W.2d 251; Balfour v. Collins, 119 Tex. 122, 25 S.W.2d 804.

"The Legislature is not to be credited with doing or intending a foolish or vain thing, nor with requiring a futile, impossible or useless thing to be done. McPherson v. Camden Fire Ins. Co., Tex.Civ.App., 185 S.W. 1055; Greene v. Robison, 109 Tex. 367, 210 S.W. 498; Connally v. Continental-Southland Savings & Loan Ass'n, 121 Tex. 565, 51 S.W.2d 293.

"In ascertaining the intent of the Legislature at the time of the passage of Article 6166z10, the Court may look as to the policy and purpose of the Act, the evil to be remedied, and the objective to be accomplished, as well as the title, heading and marginal notes.

"When the above statute is considered as a whole, including the caption, the body of the bill and emergency clause, one can arrive at but one conclusion, and that is that the Legislature intended for the State to waive immunity and assume liability for the torts committed by its officers and employees while operating automobiles, trucks, and doing other things legitimately connected with the operation of the prison system. The Act passed further provided that the prison board could use State money for procuring policies with some reliable insurance company authorized to do business in this State. It further provided that 'all insurance taken out by the said Board for and in behalf of the benefits of the State, shall be on forms approved by the Insurance Commission as to form and by the Attorney General as to liability.' The portion of the statute above quoted clearly denotes an intention that the Legislature intended for the State to assume liability for the negligent acts of its officers and employees committed while engaged in a business legitimately connected with the prison system."

■ We do not follow appellee in her argument. It is our conclusion that by the enactment of Art. 6166z10, the Legislature did not waive the immunity of the State of Texas from liability for torts committed by the convicts in the penitentiary. The article in issues does not purport to waive the State's immunity from liability. It expressly authorizes the Texas Prison Board to insure the officers and employees of the Texas Prison System from liability to third persons arising from and out of the use and operation of automobiles, motor trucks and other vehicles used by the Prison System "for the transportation of the products of the Prison System," the very purpose for which the truck involved in the collision in issue was being used. The language of this article does not create a liability against the State and its employees, with power in the Texas Prison System to protect its employees from such liability, but the insurance is for protection against an existing liability. Appellee concedes that, but for Art. 6166z10, there is no liability against appellants. There being no liability but for this article, and this article not having created a liability, then it cannot afford appellee relief. The doctrine of Welch v. State, Tex.Civ.App., 148 S.W.2d 876, 879, writ refused, is that a statute authorizing suits or claims against the state "does not render the state liable in tort for the negligence or misconduct of officers or agents of the state unless the state has, by statute, expressly agreed to be liable on such claims." Certainly, it cannot be said that Art. 6166z10 "expressly" created a liability against the state.

Appellee invokes the emergency clause of Art. 6166z10 in support of her construction. We give the emergency clause: "The fact that under present laws the Texas Prison Board has no authority to insure its officers and employees against

**528**

liability to third persons from the use and operation of motor vehicles, and the further fact that such vehicles are driven principally by trusted convicts under the direction of the officers and employees of the Prison System in order to save the expense of hiring drivers, and that under present laws the officers are in many instances rendered liable to third persons by the acts of convicts under their direction and control, creates an emergency," etc. Acts 1933, c. 208, § 3.

■ The emergency clause of an act is no part of the law, but can be looked to in aid of its construction. In this case it, to no extent, supports appellee's argument; in fact, its clear import is to deny appellee's argument; it specifically recites that its officers "are in many instances rendered liable to third persons by the acts of convicts under their direction and control." It is thus clear that the Legislature was authorizing insurance against a liability at that time recognized by law, and that it was not the intent of the Legislature to create a new liability.

■ The following authorities from other jurisdictions support the general proposition that, if the State desires to subject itself to a specific law, it could and should do so in language of clear and unmistakable import: Miller v. Pillsbury, 164 Cal. 199, 128 P. 327, Ann.Cas.1914B, 886; State v. Hill, 54 Ala. 67; Davis v. State, 30 Idaho 137, 163 P. 373, Ann.Cas. 1918D, 911; Sherlock v. State, 114 Misc. 491, 186 N.Y.S. 921.

■ The judgment against Dr. Sidney M. Lister, O. J. S. Ellingson, W. W. Waid, and N. B. Archer, in their personal relation is without support. There was neither pleading nor proof that these appellants in their personal relation were guilty of any act or acts of misfeasance or malfeasance, or cooperated in any way with Harry Lynch in the tort committed by him, as found by the jury. The record is undisputed that neither of the appellants operated the car at the time of the collision, causing or bringing about the death of the appellee's son. · The prison truck was being operated by Harry Lynch, a trusty, an inmate of the Texas Prison System. The negligent acts causing the death of appellee's son were all personal acts of negligence of the driver of the truck. In Clough et al. v. Worsham, 32 Tex.Civ.App. 187, 74 S.W. 350, 354, the court said: "And here the doctrine is

now firmly established that public officers and agents are not responsible for the misfeasances or positive wrongs, or for the nonfeasances or negligences or omissions of duty, of the subagents or servants or other persons properly employed by and under them in the discharge of their official duties. * * * For if the doctrine of respondeat superior were applied to such agencies, it would operate as a serious discouragement to persons who perform public functions, many of which are rendered gratuitously, and all of which are highly important to the public interest. * * *" This proposition has clear support in Robertson v. Sichel, 127 U.S. 507, 8 S.Ct. 1286, 32 L.Ed. 203; Bowden v. Derby, 97 Me. 536, 55 A. 417, 63 L.R.A. 223, 94 Am.St.Rep. 516. Harry Lynch, the driver of the truck, was not the agent, servant or employee of these appellants. If Harry Lynch was an agent, servant or employee of anyone, he was the agent, servant and employee of the State of Texas, or its Prison System or Prison Board. This conclusion has support in Jackson v. Gordon, 173 Miss. 759, 163 So. 502.

It follows that the judgment of the lower court must be reversed and judgment here rendered that appellee recover nothing by her suit, and that all the appellants go hence without day and recover their costs, for which execution may issue.

Reversed and rendered.